IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GREG MILLER and<br>KRISTY MILLER,<br><br>    Plaintiffs,<br><br>v.<br><br>COTTRELL, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 06-0141-CV-W-NKL<br>)<br>)<br>)<br>) |

## ORDER

Plaintiffs Greg and Kristy Miller seek recovery for damages sustained by Greg Miller ("Miller") as a result of an October 31, 2002 accident involving an auto transport rig manufactured and sold by Defendant Cottrell, Inc. ("Cottrell"). Miller alleges negligence, strict liability, and breach of implied warranty theories on the basis that the rig was in a defective condition at the time of his injury. For her part, Kristy Miller has asserted a loss of consortium claim against Cottrell and both Greg and Kristy Miller have asserted a claim for punitive damages.

Pending before the Court are Cottrell's Combined Motion for Summary Judgment [Doc. # 93], Cottrell's Motion for Summary Judgment on Punitive Damages [Doc. # 90] and Plaintiffs' Motion for Summary Judgment on Affirmative Defenses [Doc. # 91]. For the reasons stated herein, Cottrell's Motion for Summary Judgment is granted in part;

1

Cottrell's Motion for Summary Judgment on Punitive Damages is denied and Plaintiffs' Motion for Summary Judgment on Affirmative Defenses is denied.

## I. Cottrell's Combined Motion for Summary Judgment

### A. Background Information and Facts

Plaintiff Greg Miller is a 45-year-old former Jack Cooper Transport Company, Inc. ("JCT") employee. Beginning in 1985, he worked as a car hauler for JCT. As such, Miller regularly used auto transport rigs, including some auto transport rigs manufactured and sold by Cottrell.

On October 31, 2002, Miller was injured while securing a van to a 1998 CS12 model Cottrell trailer at the Wentzville, Missouri, terminal. Mr. Miller was attempting to tie down the van's passenger side rear wheel by pulling on a tie-down bar. He had the wheel 80% tied down when he determined that the tie-down bar would move no further. A split second later, the tie-down bar released and threw Miller to the ground.

Miller testified at his deposition as follows:

Q: Mr. Miller, you mentioned earlier, when you were describing how the accident occurred, that you had a release; is that correct?

A: Yes.

Q: And before the accident?

A: Not the same day, but different times, yes.

. . .

Q: And in your experience in the past, what types of things can cause this type of release?

2

> A: Chain rollover, worn equipment can cause it, a chain trying to drag over a square corner, chains catching on idlers, idler brackets, anything that ain't smooth and rolling. The chain can catch on itself. There is a number of things that can cause a chain to grab.
>
> . . .
>
> Q: And the types of things that can cause it to bind are the types of things you told me about earlier, the chain rolling over on itself, worn equipment, chain trying to drag over a square corner, the chain catching on the idler, the idler bracket, and the chain catching on itself?
>
> A: Yes. One time a shoplifted bolt sticking through the hole in the deck, I had one snag on one of them one time.
>
> Q: So, we'll add that to the list.
>
> A: Okay.
>
> Q: Snagging on a bolt.
>
> A: If you've got tarp straps hung in the wrong place, they can get snagged on a tarp strap. So, you've got to be careful with everything.
>
> Q: Okay. And what made this situation different than the other situations is that when you hit that point where it wouldn't move anymore, you didn't have an opportunity to go see what the cause of the snag was?
>
> A: Exactly.

(Miller Depo. at 95-98).

Plaintiffs have retained two experts in this case. Linda Weseman of Weseman Engineering, Inc. submitted an expert report in which she wrote:

> It is my understanding that Plaintiff Greg Miller was injured on October 31, 2002 while tying down cargo van or truck on a

3

Cottrell model CS12M3 trailer manufactured in 1998. Mr. Miller was tying down a unit in the belly, or A3 position of his rig when he experienced a sudden release. He felt the chain bind up then suddenly release. With regard to the repetitive trauma claim, it is predictable that repeated exertion of force level in excess of the recommended limits can result in repetitive trauma type injuries.

Mr. Miller's unit (Figure 1) was designed such that the chain used to tie down the vehicles must pass from the ratchet take-up spindle either over or under a steel cross member, then around the appropriate idler before attaching to the tie down slot in the undercarriage of the vehicle. The idlers have an oblong end cap. This model of Cottrell trailer in its design with a metal cross member interferes with the path of the chain (Figure 2) as it passes from the take-up spindle to the idler required to achieve the required angle of pull. The chain makes contact with this cross member, resulting in gouging of the metal cross member (Figure 3) and a friction interface.

There was no indication that the ratchets on Mr. Miller's truck had been replaced or modified prior to his accident. From the description of this incident and the maintenance records, the ratchets on Mr. Miller's truck were the same as, or substantially similar to, the original factory issued ratchets. All Cottrell quick release ratchets are the same.

(Weseman Report at 1-2).

In the "Opinions" section of Ms. Weseman's report, she concluded that

[t]he Cottrell ratchet tie down system requires excessive force to operate and is prone to dangerous sudden releases. Mr. Miller's injuries were caused by these design defects. Mr. Miller's sudden release occurred when the chain slipped during high force level use.

(Weseman Report at 5).

4

Plaintiff's second expert, Gerald Micklow, interviewed Miller and inspected the trailer on which Miller was working when the accident occurred. In his expert report, Dr. Micklow concluded that

> Mr. Miller's injury was caused by design defects in Cottrell's vehicle securement system. As he was tying down a vehicle, the chain bound then slipped. His injury was caused, in my opinion, by a combination of high force levels and the chain slipping from the idler. The idlers on Cottrell trailers are not enclosed thus allowing the chains to slip off the end of the idler. This is a design defect.

(Micklow Report at 1).

Dr. Micklow testified at his deposition that "his opinions are that the ratchet system is a defective design in general and that we need to eliminate the chains. We need to eliminate the manual force." (Micklow Depo. at 120).

Cottrell retained Mr. Jeffrey Bookwalter and Ms. Sandra Metzler of SEA, Ltd. as experts. In their report, Bookwalter and Metzler conclude that some of Miller's injuries were "not biomechanically consistent with being caused by the fall of October 31, 2002." (SEA Report at 10). The SEA experts also conclude that "since extended low-level force exertions are not required or even possible when performing [Miller's] tasks, there is no repetitive stress-type loading being applied to the body, and no risk of this type of injury." (SEA Report at 10).

### B. Proximate Cause

Cottrell moves for summary judgment on Plaintiffs' negligence, strict liability, and breach of implied warranty theories on the ground that Plaintiffs "have not and cannot

5

present the necessary evidence of specific defect and proximate cause under Missouri law to support their product liability claims." (Doc. 93 at 1).

Under Missouri law, a plaintiff may recover on a products liability claim if he shows (1) that the defendant transferred a product in the course of the defendant's business, (2) that the product was used in a manner reasonably anticipated, (3) that at the time the defendant transferred the product it was in a defective condition unreasonably dangerous when put to a reasonably anticipated use and (4) that the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold. *Peters v. General Motors Corp.*, 200 S.W.3d 1, 16-17 (Mo. Ct. App. 2006). "As to this fourth element, the plaintiff must produce evidence that neither he nor any third person has made alterations to the product, which would create a defect that could be the proximate cause of the damages incurred." *Carlisto v. General Motors Corp.*, 870 S.W.2d 505, 509 (Mo. Ct. App. 1994) (citation omitted). Proximate cause is also a required element of a strict liability failure to warn claim, as well as negligence and implied warranty claims. *See e.g., Tenbarge v. Ames Taping Tool Systems, Inc.*, 190 F.3d 862, 866 (8th Cir. 1999) (strict liability); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. 1984) (negligence); *Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 360 (Mo. Ct. App. 1989) (implied warranty).

Miller was unable to testify as to the specific defect that proximately caused his injuries because the tie-down bar released and threw him to the ground before he was able to determine why the tie-down bar would move no further. Dr. Micklow, after

6

interviewing Miller and inspecting the trailer on which Miller was working, determined Cottrell's vehicle securement system was defective because it allows the chain to slip off the end of the unenclosed idler during the tie-down process. Cottrell argues that this evidence demonstrates that Miller cannot prove as a matter of law the accident occurred because of a defect in Cottrell's tie-down system.

Cottrell argues that Dr. Micklow's report should not be considered because at least one other district court barred his testimony under *Daubert* and because he testified at his deposition that he does not know specifically what happened on the day of the accident. This Court, however, denied Cottrell's request to bar Dr. Micklow under *Daubert*. *See* June 7, 2007 Minute Entry. Furthermore, experts are rarely, if ever, at the scene of an accident. Under Missouri law, "absolute certainty of causation is not required in a product liability case." *Bass v. General Motors Corp.*, 150 F.3d 842, 850 (8th Cir. 1998) (citations omitted). In this case, Dr. Micklow, after interviewing Miller and inspecting the trailer, concluded that a defect in Cottrell's vehicle securement system caused Miller's injuries. The fact that Dr. Micklow identified several defects in Cottrell's tie-down system and could not say which specific one was the sole cause of the injury does not mean that there is insufficient evidence in the record of proximate cause.

Mr. Miller testified that:

At that position [A-3], there's nothing to hold onto. That run -- that chain, that ratchet on that end don't run straight with the idlers, it comes across there at an angle. I assume it snagged on something, but I was pulling, it was doing just fine, it was ratcheting down, it snagged, come to a complete halt, and within a split second, and within the same pull, not a second jerk,

7

> but within the same pull, released. It was like something hooked and then
> released, sent me flying.

(Miller Depo. at 87-88). Miller also testified that snags happened a lot at the A-3 position "because the idlers don't line up with the ratchet, and the chain drags across them at an angle, and . . . [y]ou always got to be careful of them chains snagging on them idlers." (Miller Depo. at 92). Furthermore, in his report, Dr. Micklow opined that the accident occurred when the chain slipped off the idler. This would not have occurred if the idlers were enclosed. Taking the evidence in the aggregate, a reasonable juror could conclude that this sudden release occurred when the chain slipped off the idler and this would not have occurred if the idler had been enclosed. Summary judgment is, therefore, not appropriate on the issue of proximate cause. Miller need not specifically prove what caused the chain to snag because it is the combination of the snag and the lack of an enclosed idler that caused the sudden release.

### C. Repetitive Trauma

In his Complaint, Miller alleges that his injuries "may . . . be due, in part, from repetitive trauma from the use of . . . Cottrell rigs, all of which have the same ratchet system defective design." (Complaint at 4). Cottrell moves the Court for an order granting it summary judgment on Miller's repetitive trauma claim on the ground that Miller has submitted no evidence of a repetitive trauma injury.

At his deposition, Miller testified that all of his injuries, with the exception of an unrelated toe injury and a sore tooth, were caused by the October 31, 2002 accident.

8

Case 4:06-cv-00141-NKL    Document 148    Filed 11/08/07    Page 8 of 15

> but within the same pull, released. It was like something hooked and then
> released, sent me flying.

(Miller Depo. at 87-88). Miller also testified that snags happened a lot at the A-3 position "because the idlers don't line up with the ratchet, and the chain drags across them at an angle, and . . . [y]ou always got to be careful of them chains snagging on them idlers." (Miller Depo. at 92). Furthermore, in his report, Dr. Micklow opined that the accident occurred when the chain slipped off the idler. This would not have occurred if the idlers were enclosed. Taking the evidence in the aggregate, a reasonable juror could conclude that this sudden release occurred when the chain slipped off the idler and this would not have occurred if the idler had been enclosed. Summary judgment is, therefore, not appropriate on the issue of proximate cause. Miller need not specifically prove what caused the chain to snag because it is the combination of the snag and the lack of an enclosed idler that caused the sudden release.

### C. Repetitive Trauma

In his Complaint, Miller alleges that his injuries "may . . . be due, in part, from repetitive trauma from the use of . . . Cottrell rigs, all of which have the same ratchet system defective design." (Complaint at 4). Cottrell moves the Court for an order granting it summary judgment on Miller's repetitive trauma claim on the ground that Miller has submitted no evidence of a repetitive trauma injury.

At his deposition, Miller testified that all of his injuries, with the exception of an unrelated toe injury and a sore tooth, were caused by the October 31, 2002 accident.

Cottrell argues that if all of Miller's injuries were caused by the October 31 accident, then there exist no injuries that could have been caused by repetitive trauma.

In Ms. Weseman's report, she concluded that "[t]he frequent exertion of forces in excess of recommended levels can predictably result in repetitive trauma type injuries such as Mr. Miller complains of." (Weseman Report at 7). Ms. Weseman, however, does not include a recounting of Miller's injuries, and she does not indicate which, if any, of Miller's injuries are repetitive trauma type injuries. Ms. Weseman's opinion that frequent exertion "can predictably result in repetitive trauma type injuries such as Mr. Miller complains of" is not synonymous with an expert opinion that Miller suffered repetitive trauma type injuries. This is particularly so because Miller's deposition testimony, that all of his injuries were caused by the October 31 accident, indicates that he did not suffer any repetitive trauma type injuries.

Finally, Miller argues that Cottrell's "experts' report refutes the suggestion by defendant that there is no medical diagnosis of repetitive trauma." (Doc. 119 at 4). While Cottrell's experts indicated that some of Miller's injuries were "not biomechanically consistent with being caused by the fall of October 31, 2002," they do not claim that Miller has repetitive trauma type injuries. (SEA Report at 10). In fact, the report suggests the opposite: "[S]ince extended low-level force exertions are not required or even possible when performing [Miller's] tasks, there is no repetitive stress-type loading being applied to the body, and no risk of this type of injury." (SEA Report at 10).

9

Because Miller has failed to submit any evidence that he suffered repetitive trauma injuries, the Court grants Cottrell's motion for summary judgment as to this claim.

### D. Failure to Warn

Missouri law applies a two-pronged causation test to failure to warn claims. *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 89 (Mo. Ct. App. 1999). The first prong requires proof of a proximate causal link between the plaintiff's injury and the product allegedly lacking a warning. The second prong requires that the plaintiff show that a warning would have altered his behavior. *Id.*

As to the first prong, Cottrell argues that "the failure of proximate cause also applies to the failure-to-warn causation test, and summary judgment is thus proper on plaintiffs' strict liability claim, including the failure to warn." (Doc. 124 at 10). In Section I(B) of this order, the Court concluded that Miller has submitted sufficient evidence from which a jury could find that a design defect in Cottrell's trailer proximately caused Miller's injuries. Accordingly, Miller has satisfied the first-prong.

As to the second prong, Miller submitted evidence that he has "never been supplied with any warnings or instructions manual from Cottrell, Inc., with regard to tying down automobiles on a Cottrell trailer. Had [he] been supplied with such [he] would have following [sic] the instructions." (Miller Aff., ¶ 2). Under Missouri law, it is presumed that a warning will be heeded. *Leonard v. Bunton Co.*, 925 F.Supp. 637, 644 (E.D. Mo. 1996). Cottrell has offered no evidence rebutting this presumption. Accordingly, Miller has satisfied the second-prong.

10

Because Miller has submitted evidence from which a jury could find that he has satisfied the two-pronged failure to warn causation test, Cottrell's motion for summary judgment is denied as to this claim.

### E. Loss of Consortium

Because Miller has a submissible claim for his injuries, Cottrell is not entitled to summary judgment on Mrs. Miller's loss of consortium claim.

## II. Plaintiffs' Motion for Summary Judgment on Affirmative Defenses

Plaintiffs move for summary judgment on Cottrell's 33 affirmative defenses on the following grounds: (1) Cottrell failed to respond appropriately to Plaintiffs' interrogatories; (2) Cottrell failed to disclose experts within the Court's Scheduling Order; (3) Cottrell's medical examiner, Dr. Katz, failed to provide the information required by Rule 26(a)(2)(B); (4) Cottrell's corporate representative, Elwood Feldman, was not properly disclosed to Plaintiffs; (5) Cottrell did not timely disclose the reports of its retained experts, Sandra Metzler and Jeff Bookwalter; and (6) portions of Metzler and Bookwalter's opinions are inadmissible under *Daubert*.

In its response, Cottrell withdrew affirmative defense numbers 9, 10 and 15. As to the balance of the affirmative defenses, Cottrell argues that "[b]ecause plaintiffs have not come forward with a proper motion, the burden has not passed to Cottrell to come forward with its evidence supporting its defenses." (Doc. 113 at 11).

According to Rule 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

11

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As to the affirmative defenses at issue here, Cottrell will bear the burden of proof at trial. As a result, Plaintiffs "can seek summary judgment by establishing that [Cottrell] has insufficient evidence to prevail as a matter of law, thereby forcing [Cottrell] to come forward with some evidence or risk having judgment entered against [it]." 10A WRIGHT, MILLER & KANE § 2727. However, Plaintiffs, the moving party with respect to this motion, must affirmatively show the absence of evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2557 (1986) ("[A]s the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.") (J. Brennan, dissenting).

In this case, Plaintiffs have not satisfied their initial burden of showing an absence of evidence in the record from which Cottrell could support their affirmative defenses. In fact, Plaintiffs never specify which affirmative defenses their arguments apply to. Instead, Plaintiffs assert discovery and *Daubert*-based arguments followed by the conclusory statement that Cottrell's "affirmative defenses should be barred as they are without factual support." (Doc. 91 at 5). To the extent Plaintiffs seek an order striking Cottrell's affirmative defenses as a sanction for failing to comply with discovery obligations, Plaintiffs should file a motion for sanctions, not a motion for summary judgment. Similarly, to the extent Plaintiffs seek an order striking Cottrell's experts' reports, Plaintiffs should file a motion to that effect.

12

Because Plaintiffs have failed to satisfy their initial burden of showing an absence of evidence in the record, their motion for summary judgment on affirmative defenses is denied.

### III. Cottrell's Motion for Summary Judgment on Punitive Damages

Cottrell moves the Court for an order granting its motion for summary judgment on Plaintiffs' claims for punitive damages on the ground that Plaintiffs "have produced no evidence that Cottrell acted with malice or consciously disregarded any safety aspects in this case." (Doc. 90 at 1).

Punitive damages are imposed to punish unlawful conduct and deter its repetition. *Peters v. General Motors Corp.*, 200 S.W.3d 1, 25 (Mo. Ct. App. 2006) (citation omitted). As such,

> [p]unitive damages are properly submitted in a strict liability case only if there is clear and convincing evidence that defendants placed in commerce an unreasonably dangerous product with actual knowledge of the product's defect. Both strict liability and negligence theories require evidence that the defendant showed a complete indifference to or conscious disregard for the safety of others. Conscious disregard or complete indifference includes situations where the person doing the act or failing to act must be conscious from the knowledge of surrounding circumstances and existing conditions, that, although lacking specific intent to injure, the person's conduct or failure to act will naturally or probably result in injury. Punitive damages are appropriate, therefore, only when the defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of others, which must be proven by clear and convincing evidence.

*Id*. at 24-25 (citations omitted); *see also, Laney v. Coleman Co., Inc.*, 758 F.2d 1299, 1304 (8th Cir. 1985).

13

In the preceding section, the Court denied Plaintiffs' Motion for Summary Judgment on Affirmative Defenses because Plaintiffs failed to affirmatively show an absence of evidence in the record supporting Cottrell's affirmative defenses. With respect to this motion, Plaintiffs will bear the burden of proving at trial that punitive damages are warranted. As a result, Cottrell "can seek summary judgment by establishing that [Plaintiffs have] insufficient evidence to prevail as a matter of law, thereby forcing [Plaintiffs] to come forward with some evidence or risk having judgment entered against [it]." 10A WRIGHT, MILLER & KANE § 2727. However, Cottrell, the moving party with respect to this motion, must affirmatively show the absence of evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2557 (1986).

Cottrell has failed to show how Miller's evidence fails to make a submissible case for punitive damages. Because Cottrell failed to submit any evidence in support of its motion, Plaintiffs were under no obligation to produce evidence in support of their claim for punitive damages. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything."); *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). In addition, given the evidence Miller did produce, a reasonable juror could conclude that there was a high degree of probability that injury would occur and Cottrell was aware of this risk of injury.

14

Furthermore, as indicated in Miller's brief in opposition to Cottrell's Motion for Summary Judgment, on page 3 [Doc. # 188], the case of *Ford v. GACS, Inc.*, 265 F.2d 670 (8th Cir. 2001), is distinguishable from the facts in this case.

Therefore, Cottrell's motion for summary judgment on punitive damages is denied.

## IV. Conclusion

Accordingly, it is hereby

ORDERED that Cottrell's Combined Motion for Summary Judgment [Doc. # 93] is GRANTED as to Miller's repetitive trauma claim and DENIED in all other respects;

ORDERED that Plaintiffs' Motion for Summary Judgment on Affirmative Defenses [Doc. # 91] is DENIED; and

ORDERED that Cottrell's Motion for Summary Judgment on Punitive Damages [Doc. # 90] is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: November 8, 2007  
Jefferson City, Missouri